Johnston, Ch.
delivered the opinion of the Court.
The question remaining for decision in this case, is the one which was reserved out of the judgment rendered on a former occasion, and it is this: When a bill is properly filed for ^ie delivery of slaves, and the plaintiff establishes his right, should compensation be decreed for such of the slaves as may happen to die pending the suit?
The jurisdiction of the Court being now well established, to decree the delivery of specific slaves, and such suits being of common occurrence; it must often happen, when the bill is brought for a large number, or stock of family negroes, that some of them may die before the hearing. Indeed, it would be a rare case in which such a contingency did not take place. The question before us is, therefore, one of unusual practical importance, and deserving of serious consideration.
In Trapier v. Glover, which was a case of specific delive-demanded by remainder-men, from volunteers under the ’deceased life tenant, compensation was decreed for slaves who had died pendente lite. The Court, in grantingthis remedy, proceeded upon the principle which obtains in like cases at law. “ Certainly” says the Court “ the general rule (meaning the rule at law) is as contended for on the part of the plaintiffs, and supported by the authorities referred to, — that if a bailee or pawnee, who is a trustee, wrongfully refuses to deliver the deposit or pledge, when demanded, he thenceforth keeps it at his own risk, and will be liable for the value, if it afterwards perish. (See Story on Bailm. 93, 231, and authorities there referred to.) The principle appears to apply to the present case: the tenant for life, or volunteers under him, being regarded as trustees. The value of these slaves must, therefore, be a subject of reference.”
If the defendant in the case before us were a volunteer under the life tenant, this decision would be conclusive. But we are of opinion that though that circumstance be wanting, the judgment must still be the same.
Supposing a bill to be filed, in a proper case, against a defendant in possession of slaves, it constitutes a demand for their immediate delivery: and nothing remains for the plaintiff, but to establish his right of property. If that is established, Equity will decree the delivery. In this case the Court *229 has supported the plaintiff’s right of property; and has ordered the slaves remaining alive at the hearing to he deliv-1 ered up. The only question is whether compensation should be decreed for those who have died; who were equally demanded, and who equally belonged to the plaintiffs.
There is no doubt that, if these slaves had been sued for at law, the refusal to deliver them up would have amounted to a conversion ; and that the verdict and judgment would have been for their full value, including hire up to their death. It would be very singular if this Court, undertaking to do more complete justice, should do less; and suffer an accident, occurring while its suitor is before it, to utterly defeat him of his right.
Where slaves die pending a suit for their delivery, the Court has but three alternatives: — to refuse compensation for them; or send the party to law for compensation; — or give the compensation by its own decree.
If it adopt the first alternative, and refuses compensation, its judgment is conclusive, and prevents the plaintiff from recovering it at law, as he otherwise might have done: — so that by assuming jurisdiction of the case made in the bill, it has, in effect, prejudiced the plaintiff, by taking from him an undoubted legal right.
If it dismisses the bill, without prejudice, as to the deceased slaves, and sends the claimant to law for their value, it increases the costs and delays of litigation ; a course which cannot but be regarded as both oppressive and unnecessary, when it is considered that it has already heard the evidence and adjudicated the right of property, in that part of its decree which relates to the surviving negroes. Such a course would, also, be a plain violation of that acknowledged principle, which makes the prevention of circuity of action a general ground of Equity jurisdiction.
The constant course of the Court, where it has obtained jurisdiction of a case, is to go on, and do complete justice to the parties in all matters incidentally connected with it.
An objection is made that, if the Court undertakes to give the value of the decesed slaves, it assumes to award damages; a matter beyond its jurisdiction. This objection is little better than verbal. The Court does not undertake to give damages for the trespass or conversion. Having a right to award the delivery of the slaves, as they stood at the inception of the suit, and being frustrated in this remedy by an accidental occurrence, it awards their value in lieu of the slaves themselves: — just as the Law Courts, in actions of detinue, give judgment for the property sued for, or its equivalent in money ; which latter is not adjudged (in detinue) as damages, but as a mere alternative for the property.
There is another view worthy of consideration. Suppose *230 s^aves decreed to be delivered up should die after the decree, or should have died before, and the fact was unknown ; the ^era^ Pel‘formauce of the decree for their delivery would thus be rendered impossible.
Hinson'& wife Pickett MSS. G.
It would never do to say that the defendant was entirely exonerated from the obligations of the judgment against him. And_ suppose him to be attached for non-compliance with the decreeupon what other terms shouLd he be discharged, than upon coming as near to a compliance as possible, by paying the value of the property ?
It is said, however, in the decree of the Chancellor, that the defendant, under the circumstances, should not be made-to pay the value of these slaves. The Chancellor appears to refer to the doubtfulness of the evidence of title: which he supposes justified the defendant in retaining possession until the right should be adjudicated.
The doubtfulness of the evidence would have been no exoneration of the defendant in an action of trover at law, for the dead slaves; and in this Court it was no exoneration as to the living.
It is readily conceded that testimony may be so dubious and uncertain as not to amount to evidence; not serving to convince the mind. In such cases, the Court may refuse, and should refuse, to exercise its acknowledged functions. But if there, is such evidence as authorizes it to interpose for one purpose, it may and should interpose for every purpose to which the evidence applies. In this case the Court has determined that the evidence of the plaintiff’s title was sufficient to warrant a decree for the delivery of the living slaves: and the decree on that point was just and conscionable only because the negroes ordered to be delivered up were proved to be the plaintiff’s property. The same evidence applied to the whole body of slaves, and proved that the dead, as well as the living, belonged to the plaintiffs. ^01'mei' were converted by the defendant, to his own use, with the laiter, and died in his service: and why should he not account for their value?
It is ordered that so much of the decree as refuses to award compensation for the slaves who died pendente lite, be reversed: and it is decreed that the defendant is accountable for the value of the same.
It is ordered, that the case be remanded to the Circuit Court and referred to the Commissioner, to take the account.
Hae-pee., Ch. DunkiN, Ch. and Caldwell, Ch. concurred.

Decree partially reversed.